UNCLASSIFIED//FOR PUBLIC RELEASE

███████

FILED WITH THE
COURT SECURITY OFFICER
CSO
DATE

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MUHAMMAD AHMAD ABDALLAH AL-ANSI, et al., | : |
| | : |
| | : |
| | : |
| Petitioners, | : |
| | : |
| v. | :  Civil Action No.  08-1923 (GK) |
| | : |
| BARACK H. OBAMA, et al., | : |
| | : |
| Respondents. | : |
| | : |

## ORDER

A Motions Hearing was held in this case on August 17, 2009, which took place in a sealed courtroom due to the discussion of classified information.  Upon consideration of Petitioner Al-Ansi's Motion to Compel Discovery and Production of Classified Information [Dkt. Nos. 99/100], the Opposition, Reply, representations of the parties, and the entire record herein, it is hereby **granted in part and denied in part.**

Because of the very large number of discovery requests made by Petitioner, counsel were asked to focus their arguments on the following major substantive issues in dispute: 1) the status of the Guantanamo Review Task Force ("GRTF"), 2) the scope of certifications of provision of exculpatory information provided by

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

███

the Government,[1] 3) medical records of Petitioner and his accusers, 4) bounties, 5) two depositions sought by Petitioner, 6) statements of Petitioner as well as his accusers, 7) photographs of Petitioner, and 8) the relevance of Petitioner's allegations of torture, and documentation relevant to those allegations. Counsel fully addressed these issues and were given the opportunity to raise any other issues, including those which had been covered in their pleadings.

Based upon the arguments of counsel, the Case Management Order ("CMO") of February 12, 2009, the persuasive decisions of other judges on this District Court, and the applicable case law from the Supreme Court and our Court of Appeals for this Circuit, the Court reaches the following conclusions.

I.   Automatic Discovery

As to Petitioner's requests under § I.E.1 of the CMO, it is hereby

ORDERED, that Request No. 1 is **denied.**  Petitioner requests "[a]ny documents or objects in the Government's possession that are referenced in the factual return."  The request sweeps far too

---

[1]     Despite the Government's representations at the hearing about the completeness of its certifications, it is still less than clear to the Court whether it has certified that it has complied with many of the discovery requests made by Petitioner. The Government should feel free to inform the Court as to any of the orders contained herein which it believes it has already certified compliance with.

-2-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

▆

broadly, and does not fit under the parameters of § I.E.1; and it is further

**ORDERED**, that Request No. 2 is **denied** as formulated. Petitioner requests "[a]ll statements, in whatever form, made or adopted by Petitioner that relate to the information contained in the factual return." Petitioner is entitled to all statements, "in whatever form," that he made or adopted, which relate to any information contained in the Factual Return upon which the Government relies to justify his detention. See Zaid v. Bush, 596 F. Supp. 2d 11 (D.D.C. 2009); and it is further

**ORDERED**, that Request No. 3 is **denied** as formulated. Petitioner requests "[i]nformation about the circumstances--whether coercive or not--in which such statement[s] of the Petitioner were made or adopted." The Government is required to produce "circumstances information" only for those statements upon which the Government relies.

II. Additional Discovery and Requests for Additional Exculpatory Evidence

As to Petitioner's requests under §§ I.D.1 and I.E.2 of the CMO, it is hereby

**ORDERED**, that Request No. 4 **is granted in part and denied in part.** Petitioner requests "[a]ll reports[,] interviews, interrogations, and statements (including tapes, transcriptions[,]

-3-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

███████

and original notes) referring to or discussing Petitioner, whether referenced in the factual return or not." The Government is required to disclose all reports, interviews, interrogations, and statements--including tapes, transcripts, and original notes--that refer to or discuss Petitioner, provided that these items contain information that the Government relies on to justify detention.

This requirement covers negative identifications provided by any other detainees who could not identify Petitioner as an al-Qaida bodyguard, a participant in battle at Tora Bora or elsewhere, or an individual who fled or was captured with a group of alleged al-Qaida bodyguards. Such failures to identify, if made, would constitute exculpatory information under § I.D.1; and it is further

**ORDERED**, that Request No. 5 ("[a]ll prior and subsequent reports, interviews, interrogations, and statements (including tapes, transcriptions[,] and original notes) of any witness identified in response to Request No. 4 (whether referenced in the factual return or not)") is **denied** as over-broad; and it is further

**ORDERED**, that Interrogatory No. 1 and Request No. 6 are **denied**, as Petitioner has withdrawn them; and it is further

**ORDERED**, that Request No. 7 is **denied**. Petitioner requests "[a]ll information concerning whether the declarants in the interviews and statements sought in Requests No[s]. 4 and 5 have been released or are subject to plans for release." Under § I.E.2,

-4-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED///FOR PUBLIC RELEASE

███████

Petitioner has not adequately explained how such evidence would demonstrate that his detention is unlawful.  Second, under § I.D.1, the link between the information sought and the justification for Petitioner's detention is too attenuated to constitute exculpatory evidence.  Finally, under § I.E.2(4), the requested discovery would unduly burden the Government and very possibly interfere with delicate negotiations with other countries; and it is further

ORDERED, that Request Nos. 8-10 are **granted in part and denied in part.**[2]  Request Nos. 8 and 9, and the portion of No. 10 that refers to audio or video tapes of CSRT and ARB proceedings, are **denied.**  Under § I.E.2, the disclosure sought is too broad, and not narrowly tailored.  Moreover, Petitioner has already been given a significant number of documents pertaining to the CSRT and ARB proceedings.  While the Government is absolutely required to disclose, under § I.D.1, any exculpatory evidence to be found in those proceedings, comprehensive disclosure of all of those proceedings is unjustified because the conclusions reached in those proceedings are not relevant to what must be decided in this

---

[2]     Request No. 8: "All classified information reviewed by the Combatant Status Review Tribunal in making the determination that Petitioner was an 'Enemy Combatant.'"
        Request No. 9: "All classified information reviewed by the Administrative Review Board in making the determination that the continued detention of Petitioner is necessary."
        Request No. 10: "Any audio or video tapes of Petitioner's CSRT proceeding, Administrative Review [B]oard Proceedings, and interviews or interrogations of Petitioner."

UNCLASSIFIED///FOR PUBLIC RELEASE

███

litigation, namely the lawfulness of his continued detention.

As to the requested interviews or interrogations of Petitioner, the request is **granted**, but only as to statements in the Factual Return upon which the Government relies; and it is further

ORDERED, that Request No. 11 is **granted in part**. Petitioner requests "[a]ll documents concerning the medical treatment of Petitioner since he has been in United States custody, including but not limited to all medical records and psychological records, following his torture in Kandahar, and all medical records

████████████

Petitioner is entitled to medical and psychological records from 2001-2004, because they may provide exculpatory information relating to torture, whose continuing impact may have affected the seven statements given by Petitioner upon which the Government relies; and it is further

ORDERED, that Request Nos. 12 and 14-21 are **granted in part and denied in part**. With some minor variations, the requests seek information about nine witnesses[3] relied upon by the Government, including "all medical records showing mental instability or physical illness from the time of capture through the present (or

---

[3]    The nine witnesses are ████████████

███

date of release); all statements, interviews, memoranda, recordings, and interrogation reports of [the witness]; all records of or memoranda concerning the torture or use of harsh interrogation tactics on [the witness]; any documents concerning incentives, rewards or plans for release for [the witness]; and all documents concerning the credibility of [the witness'] accusations against other detainees, including but not limited to statements made by other detainees."

As formulated, the request is far too broad, open-ended, and not narrowly tailored under § I.E.2. The Government is required to produce all medical records showing mental instability or physical illness from the time of capture through the time that the witness gave his most recent inculpatory statement upon which the Government relies. The Government must also produce all records or memoranda of torture concerning abusive interrogation tactics for that period, and all documents concerning the credibility of the witnesses' accusations against Petitioner or any other detainees; and it is further

ORDERED, that Interrogatory No. 2[4] and Request No. 13 are denied. Petitioners ask that the Government "describe the circumstances under which ███ made an 'in person'

___

[4]   This interrogatory was mis-labeled as "Interrogatory No. 1" in Appendix A to Petitioner's Motion.

-7-

UNCLASSIFIED///FOR PUBLIC RELEASE

███████

identification of Petitioner and produce all interview notes, memoranda, and documents concerning the same.    (Factual Return, Narrative ¶ 16; ████████████████ ."

The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request.    The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

**ORDERED**, that Request No. 22 is **denied**. This request states, "[t]he Government relies on the following reports which even in their classified form remain highly redacted.    Please produce unredacted copies of the following documents relied upon by the Government:  (a) ████████████  (b) █████████████, (c) ██ ███████████████████████████████████████████ ███████

The Government is not relying upon the redacted information, and therefore need not produce unredacted versions of the reports; and it is further

**ORDERED**, that  Interrogatory No. 3 and Request No. 23 are **granted**.   Petitioner requests that the Government "identify the source of information in the following intelligence reports and produce any documents or memoranda reflecting on the source's

-8-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

████

credibility:  (a) █████████████ ,  (b) ████████████ ."[5]

Petitioner is not seeking the redacted information, he is seeking

the source for that portion of the statements which is not redacted

and upon which the Government does rely; and it is further

ORDERED, that Interrogatory No. 4 and Request No. 24 are

denied.   Petitioner requests that the Government "identify the

source(s), author(s), and translators involved in the creation of

the document appended to the Factual Return: ███████

████████████ " and "produce all documents, tapes,

photographs, or interview notes supporting the ██████

████████████ and all 'pertinent information collected

concerning source and source family passed to the FBI █████ and

is available on request,' as stated in that document;" and it is

further

ORDERED, that Request No. 25 is granted.   Petitioner seeks

production of █████████████████████████████

███████████████████████████████████████

███████████████████████████████ and any documents or

evidence implicating Petitioner as being ████████████   This

document is the only one on which the Government relies to prove

that Petitioner received combat training.   Obviously, any

---

[5]   Petitioner mistakenly included two requests for the same
document in Appendix A to its Motion.  That duplicative request has
been omitted.

UNCLASSIFIED//FOR PUBLIC RELEASE

███████

impeachment of this document could, under § I.E.2, produce evidence that undermines the Government's claim of lawful detention.  The request is narrowly tailored and specifies the particular discovery sought; and it is further

**ORDERED**, that Request No. 26 is **denied**. Petitioner requests "[a]ll information relating to the United States['] use of bounties to capture individuals in connection with the hostilities in Afghanistan after September 11, 2001."  The request sweeps far too broadly; and it is further

**ORDERED**, that Interrogatory No. 5 and Request No. 27 are **granted**.  Petitioner requests that the Government "identify and describe any payments or bounties that were made in connection with the capture of Petitioner and/or the transfer of Petitioner to U.S. custody.  Please describe the circumstances of any such payments, including the name of the recipient and the amount of the payment and any supporting documentation of such bounty."

Under § I.D.1 of the CMO, such information qualifies as exculpatory evidence.  See Order at 3-4, Abdah v. Obama, Civ No. 04-1254 (HHK) (D.D.C. Apr. 8, 2009) [Dkt. No. 477]; and it is further

**ORDERED**, that Interrogatory No. 6 and Request Nos. 28 and 29[6]

---

[6]     Request No. 28: "All information and documentation about the circumstances of Petitioner's 'arrest' or 'capture' (as alleged in the Factual Return) in Pakistan and the circumstances of

-10-

UNCLASSIFIED//FOR PUBLIC RELEASE

██████

are **denied**.  The Government claims that it has already searched

for, located, and produced all reasonably available evidence in

response to this request.  The Government is required to file a

sworn certification to that effect, or respond to the request; and

it is further

ORDERED, that Request No. 30 is **granted in part and denied in**

**part**.  Petitioner requests "[a]ny documents, including but not

limited to any interrogation logs or interrogation plans that list

or describe the date, time, place or circumstances of any

interrogations of Petitioner, all Analyst Support Packages for Mr.

al Ansi (including the most up-to-date support package)."

The Government is required to disclose any interrogation logs,

if they exist, that list or describe the date, time, or place of

any interrogations of Petitioner; and it is further

ORDERED, that Request No. 31 is **denied**.  Petitioner requests

that the Government "produce all documentation of the Government's

---

Petitioner's movement between detention facilities from the date
Respondents contend he was 'captured' until he was transferred to
Guantanamo.  This request encompasses, but is not limited to,
documents related to Petitioner's arrest at the Pakistani border,
the Pakistani detention facility, and his detention under U.S.
custody in Kandahar."
    Interrogatory No. 6 and Request No. 29: "Describe the
circumstances of Petitioner's arrest and produce all documents and
evidence that Petitioner was 'captured with approximately██████other
members of Usama bin Laden's security detail, including several
bodyguards,' paragraphs 33 and 44 of Respondents' Narrative to the
Factual Return Narrative."

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

██████

interrogation techniques and torture of Petitioner while detained in Kandahar and Guantanamo Bay, Cuba." The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request. The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

**ORDERED**, that Request No. 32 is **denied**. Petitioner seeks "[a]ll communications between Government interrogators and their superiors (whenever located) about the interrogation of Petitioner." The request is open-ended and sweeps too broadly; and it is further

**ORDERED**, that Request No. 33 is **granted**. Petitioner is entitled to "[a]ny documentation of Petitioner's travel from Yemen to Pakistan and Afghanistan, including passport and visa documentation;" and it is further

**ORDERED**, that Request No. 34 is **denied**, for failure to comply with the requirements of § I.E.2(3). In asking for "[a]ny documentation or items (or a log or inventory of such items) taken from Petitioner since the time of his capture in 2001," Petitioner provides no indication of why, if granted, such a request would produce evidence that his detention is unlawful; and it is further

**ORDERED**, that Request No. 35 is **denied**. Petitioner requests "[a]ll documents proving or disproving that Petitioner attended the

-12-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



Dimaj Institute or personally knew Shaykh Muqbil al Wadi."   The

Government claims that it has already searched for, located, and

produced all reasonably available evidence in response to this

request.   The Government is required to file a sworn certification

to that effect, or respond to the request; and it is further

ORDERED, that Request No. 36 is **granted in part**.   Petitioner

and it is further

ORDERED,  that  Request  Nos.  37  and  38[7]  are  **denied**.   The

Government claims that it has already searched for, located, and

produced all reasonably available evidence in response to these

---

[7]       Request No. 37: "All documents from the Pakistani police
station that concern the circumstances of Petitioner's 'arrest' and
all documents from the Pakistani detention facility in Peshawar
where he was detained prior to being turned over to U.S. Custody."
       Request No. 38: "Please produce any agency evaluations of the
credibility of the information contained in any interrogation
report upon which Respondents rely."

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

███

requests.  The Government is required to file a sworn certification to that effect, or respond to the request.

To the extent that the Government is arguing that the information sought under Request No. 37 would not be relevant, and therefore was not provided, the Petitioner's request is **granted**, under § I.E.2; and it is further

**ORDERED**, that Request No. 39 is **denied** without prejudice. Petitioner requests production of "any documentation, including employment records of termination, concerning the skill and expertise of the following translators used by Respondents: ███

███
." 

Petitioner has not identified any specific words, phrases, or statements from any evidence upon which the Government relies in the Factual Return that he alleges was not properly translated, summarized, or paraphrased.  Consequently, the requirement in § I.E.2(3) of the CMO has not been satisfied; and it is further

**ORDERED**, that Request No. 40 is **denied**. Petitioner seeks production of "the Justice Department's Office of Professional Responsibility (OPR) investigating the conduct of the Bush Administration lawyers' torture memos."

The request is over-broad and open-ended, and therefore fails

-14-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED///FOR PUBLIC RELEASE

███

to comply with § I.E.2(3). Petitioner fails to demonstrate why this information would specifically address the lawfulness of Petitioner's detention; and it is further

ORDERED, that Request No. 41 is **denied**. In seeking production of "Inspector General John L. Helgerson's Report issued on May 7, 2004," Petitioner again fails to demonstrate, under § I.E.2(3), why this report would specifically address the lawfulness of Petitioner's detention. The Report spans thousands of pages, and Petitioner does not explain how the critique of the legality of certain interrogation methods could rebut the Governments's factual basis for its case against Petitioner; and it is further

ORDERED, that Request No. 42 is **denied**, as it is duplicative of Request No. 40; and it is further

ORDERED, that Request No. 43 is **granted in part and denied in part**. Petitioner seeks "any documents drafted by Government officials, employees, or outside expert consultants that question the means used or reliability of information obtained as a result of any 'harsh' interrogation techniques of the types described in the CIA Torture Memos or which were used on any of the detainees on whose statements Respondents rely to support the claim that Petitioner was an enemy combatant or to otherwise justify his detention for the past eight years."

As formulated, the request is not narrowly tailored, and is

-15-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

███████

open-ended.  The Government is, however, required to disclose what,

if any, requests were made by interrogators to use specific harsh

interrogation techniques for which explicit permission was required

in interrogating detainees upon whose accusations the Government

relies in this case; and it is further

ORDERED, that Request No. 44-46 are **denied**, as Petitioner has

withdrawn them; and it is further

ORDERED, that Request Nos. 47-50[8] are **denied**, under § I.E.2 of

the CMO.   They  are  open-ended  and  would  unduly  burden  the

Government.

III. Request for Admissions

As  to  Petitioner's  Request  for  Admissions[9]  ("RFAs"),  it  is

---

[8]      The requests in this interval were mis-numbered, as there
were  two  Request  No.  48s.   The  ruling  applies  to  both  of  those
requests.

[9]      Petitioner  asks  the  Government  to  admit  or  deny  the
following:
1.   Prior  to  traveling  to  Afghanistan,  Muhammad  Ahmed
     Abdallah al Ansi lived in Sanaa, Yemen.
2.   There is no evidence that Muhammad Ahmed Abdallah al Ansi
     ever  committed  any  acts  hostile  to  the  United  States
     during his years in Yemen.
3.   There is no evidence that Muhammad Ahmed Abdallah al Ansi
     participated  in  any  violent  act  during  his  years  in
     Yemen.
4.   There is no evidence that Muhammad Ahmed Abdallah al Ansi
     was arrested or convicted of any crime during his years
     in Yemen.
5.   There is no evidence that Muhammad Ahmed Abdallah al Ansi
     was  a  member  of  any  extremist  or  anti-United  States
     organization during his years in Yemen.
6.   There is no evidence that Muhammad Ahmed Abdallah al Ansi

-16-

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

■

hereby

**ORDERED**, that the Government must respond to RFAs 2-9. The Government's current responses to RFAs 2-9 are evasive and disingenuous. The Government is to squarely admit or deny whether "there is evidence" supporting the particular request for admission. If there is "no evidence" regarding a specific request for admission, the Government is to say so.

IV. Supplemental Request for Production

In Appendix B to Petitioner's Motion, he includes an additional request for production.[10] It is hereby

**ORDERED**, that the supplemental request is **denied**. It would be inappropriate for this Court to issue any order which could affect

---

engaged in any act or made statements hostile to the United States or his allies during his years in Yemen.
7. Muhammad Ahmed Abdallah al Ansi was taken into custody by the Pakistani police, not the United States military.
8. There is no evidence that Muhammad Ahmed Abdallah al Ansi had a weapon of any kind at the time he was taken into custody.
9. No physical evidence was obtained from Muhammad Ahmed Abdallah al Ansi at the time he was taken into custody that indicated he was engaged in any unlawful activity or activity hostile to the United States or its allies.

[10] Supplemental Request: "Any photographs documenting the abuse of prisoners in Iraq and Afghanistan by United States military personnel, which are the subject of litigation between the Government and American Civil Liberties Union and which are referenced in the May 14, 2009, New York Times article attached hereto, in which the Petitioner, Muhammad Ahmad Abdallah al Ansi (ISN 29), or any of the detainees upon whose statements Respondents rely in the Factual Return are depicted."

-17-

UNCLASSIFIED//FOR PUBLIC RELEASE

████

or interfere with another judge's handling of a case on his or her

docket.    It would be particularly inappropriate as to the

"litigation between the Government and American Civil Liberties

Union," given the complexity and sensitivity of that litigation,

with which that judge is undoubtedly fully familiar and with which

this Court has no familiarity.

V.    Depositions and/or Interviews

As to Petitioner's request to take depositions or conduct

interviews of two central Government witnesses, upon whose

accusations the Government relies to justify detention, it is

hereby

**ORDERED**, that the request is **granted in part and denied in

part**.  Petitioner has demonstrated restraint in asking for access

to only two of the multiple accusers.   Moreover, those two

detainees have already retracted the substance of their accusations

against Petitioner.   Petitioner's counsel has already received

permission from counsel for one of these detainees to interview

him, and has been in touch with counsel for the other detainee and

has reason to believe that permission will be given to interview

him.    In the context of this request, no detainee may be

interviewed without the permission of his counsel.

Petitioner has assured the Court that his counsel will make

all arrangements to coordinate any procedure allowed by the Court.

-18-

UNCLASSIFIED//FOR PUBLIC RELEASE

████

Counsel correctly point out that the only difference between such an interview and a regular counsel-client meeting at Guantanamo Bay would be the addition of the detainee's own counsel. There is no persuasive evidence that the addition of that one individual would either compromise security or cause undue logistical burdens to the Government.

Finally, the Court is permitting a witness interview rather than the deposition that Petitioner prefers. The Court wishes to make the proceedings as simple and uncomplicated as possible, rather than adding another individual to the proceeding (i.e., the court reporter) and additional equipment which could be prove to be problematic. All counsel will of course remain subject to the existing requirements and prohibitions contained in the Protective Orders, meaning that no classified information may be shared by any counsel with the detainee being interviewed. Petitioner's counsel has assured the Court that she will clear any problematic questions and/or subject-matter areas with the Government.

August 20, 2009

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

Copies to: Attorneys of Record via ECF

-19-

UNCLASSIFIED//FOR PUBLIC RELEASE