## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MUHAMMAD AHMAD ABDALLAH** | : | |
| **AL ANSI,** *et al.*, | : | |
| | : | |
| **Petitioners,** | : | |
| | : | |
| v. | : | **Civil Action No. 08-1923 (GK)** |
| | : | |
| **BARACK H. OBAMA,** *et al.*, | : | |
| | : | |
| **Respondents.** | : | |

## <u>MEMORANDUM ORDER</u>

On August 20, 2009, the Court entered a lengthy Order ("Discovery Order") [Dkt. No. 129], subsequent to a Motions Hearing on Petitioner's Motion to Compel Discovery and Exculpatory Evidence held on August 17, 2009.

On August 19, 2009, in response to the Court's request [Dkt. No. 123], Petitioner filed a proposed order [Dkt. No. 124] regarding certain rulings made during the Motions Hearing.  The Government filed an Opposition to that proposed order [Dkt. No. 126], and the Petitioner filed his Reply [Dkt. No. 127], ending that round of briefing.

On September 30, 2009, the Government filed a Motion to Clarify or Reconsider Certain Discovery Order Provisions ("Mot. for Reconsideration") [Dkt. No. 131].  Petitioner filed his Opposition on October 19, 2009 [Dkt. No. 134], and the Government filed its Reply on October 29, 2009 [Dkt. No. 135].  The Government's Motion, it should be noted, was filed approximately six weeks after the Court ruled on August 17, 2009.

After reviewing all the papers, it is clear that the two sets of filings are interrelated and all of them relate to the substance of the rulings on August 17, 2009. Consequently, the Court will deal with both sets of filings in this Memorandum Opinion.[1]

The Government is asking for reconsideration or clarification of numerous matters decided at the hearing on August 17, 2009, each of which the Court will now address.[2]

1.   The Government seeks clarification of the scope of its search obligations. In particular, the Government wants to be clear that the Court intended the search order to encompass all reasonably available materials, as that term is used in several different Court Orders, but that the Court did <u>not</u> intend that search to include all Government files. The answer is very simple. The Government is required to search its Consolidated Files. In addition, by Order dated May 11, 2009 [Dkt. No. 68], this Court ruled that the data and documents compiled by the Attorney General in response to Exec. Order No. 13,492, 74 Fed. Reg. 4897 (Jan. 22, 2009) ("Task Force Data"), is "reasonably available evidence" within the meaning of Section I.D of its Case Management Order, entered in this case on November 17, 2008, and as amended on February 12, 2009 [Dkt. No. 48], and

---

[1]   The Court is concerned about the tone and rhetoric which the parties, particularly Petitioner, are using in this set of pleadings. The accusations, rhetoric, suspicion of improper motives, etc., are totally unnecessary and certainly will not affect the Court's rulings on the merits. It is the Court's experience in handling a number of Guantanamo Bay cases that Government attorneys are doing their best, under difficult conditions, to handle a heavy case load, to comply carefully with Court Orders, and to sift through many thousands of documents. Those attorneys who have appeared before this Court have behaved professionally and responsibly, and have attempted to represent their client -- the United States Government -- in as honorable a fashion as circumstances, and their superiors, will permit.

[2]   While the Government claims it is seeking reconsideration of only "five limited elements" of that Order, it is actually seeking extensive reconsideration of numerous rulings made by the Court at the hearing.

must be produced to the extent that the data or documents are exculpatory, or otherwise covered by the Case Management Order, the May 11, 2009 Order, or other Orders of this Court.

At the hearing on August 17, 2009, the Government objected to being required to search the information being reviewed by the Task Force implementing the President's Executive Order to close the facilities at Guantanamo Bay.  The Government explained that review of the Task Force files would require review of more than 50,000 additional documents, and would take, at a minimum, an estimated 60 days for review, plus 30-45 days to clear any responsive documents. Petitioner understands that and is willing to accept the extra time required to produce this information, in exchange for obtaining what he thinks will be valuable information.  In addition to the inclusion of Task Force Data in those materials which constitute "reasonably available evidence," this Court has also included in that definition "any evidence discovered by the Government attorneys while preparing the Petitioner's factual return or while litigating habeas corpus petitions filed by other detainees at Guantanamo Bay."  Order at 3 (May 11, 2009) [Dkt.  No. 68].

The Petitioner asks that the Government also be required to search "evidence in the *habeas cases* (pending, stayed, or closed) of other Guantanamo detainees, and any other location known to the Government to contain responsive documents or information and potentially exculpatory evidence related to Muhammad al Ansi or any of his accusers."  Pet.'s Opp'n to Mot. to Reconsider, at 7.  This request is **denied**.  Not only is it far too broad and burdensome, but it is far beyond any definition which this Court has ever adopted for "reasonably available evidence."

Finally, there is no question, and the Government does not deny, that it has a continuing duty to supplement any prior discovery pursuant to the Case Management Order.

2.      The Government requests that the Court clarify its Discovery Order granting in part Petitioner's request # 4, to disclose "all reports, interviews, interrogations, and statements . . . that refer to or discuss Petitioner, provided that these items contain information that the Government relies on to justify detention," including "negative identifications provided by any other detainees." Mot. to Reconsider at 8.  The Government admits that it is not searching, at this time, "for negative identifications that are included in documents that nowhere mention petitioner by name, alias, or identifying number (e.g., a detainee's failure to identify 'anyone else' as being at a particular location or associated with a particular group)."  Id. at 9.  In support of its position, the Government relies upon language in the Discovery Order requiring disclosure of various reports that "refer to or discuss Petitioner."  Discovery Order at 4.  In addition, the Government argues that any such search for negative identifications would be "wholly impracticable or impossible."

Petitioner argues that by searching only for negative identifications that include the Petitioner's name or ISN number, the Government will not be able to locate the most exculpatory negative identifications. Pet.'s Opp'n at 9. Petitioner presents a number of examples to demonstrate instances where the Government has failed to search and disclose, and argues that those examples present precisely the kind of information he is seeking in this case.

Petitioner's arguments are far from frivolous.  However, the Government represents in its Reply that its "method of searching will capture the overwhelming majority of negative identifications based upon photobooks."  Id. at 7.  The Government also represents that a number of different types of negative identifications would be located with a search using Petitioner's name, alias, and identifying number.  Id. at 8.  Given the Government's representations and the focus in the Discovery Order on disclosure of reports that refer to or discuss Petitioner, as well as the enormous

burden that Petitioner's request would place on the Government, the Court concludes that the Government need only search for negative identifications in documents that include references to Petitioner's identity.  See Bin Attash v. Obama, 628 F. Supp. 2d 24, 31-32 (D.D.C. 2009) (Lamberth, J.).  Therefore, the Government's Motion for Reconsideration is **granted** on this issue.

       3.       The Government seeks reconsideration of that portion of the Discovery Order which requires, with regard to certain witnesses, that the Government produce, inter alia, "all documents concerning the credibility of the witnesses' accusations against Petitioner or any other detainees." Discovery Order at 7.  The Government argues that in Ahmed v. Obama, No. 05-1678, this Court required production of only those "credibility assessments relating to those specific statements of third-party individuals upon which it relies in establishing its case for detention." Order at 1-2 (April 7, 2009) [Dkt. No. 200].

       Petitioner makes it clear in his argument that he "seeks specific documents where the Government has determined that the accuser-witness is not telling the truth about accusations he has made against other detainees . . . .  Whether a detainee witness lied about the identification of other members of groups such as bodyguards or fighters at Tora Bora is both exculpatory and undermines the credibility of similar allegations in the Factual Return herein."  Pet.'s Opp'n at 13.

       Petitioner is seeking traditional exculpatory impeachment materials against an accuser.  He will argue that if an accuser lied about one thing, he will lie about other matters.  This argument is unanswerable.  Given the specificity of what Petitioner is seeking, the Government exaggerates the difficulty of finding whether such evidence exists.  The credibility of Petitioner's accusers will be central at this Merits Hearing.  He is entitled to know whether his accusers have lied on other occasions, so that he can argue that they should not be believed if the Government is again offering

their statements in these proceedings.[3]  Therefore, the Government's Motion for Reconsideration is **denied** on this issue.  See Order at 2, Batarfi v. Gates, Civ. No. 05-0409 (D.D.C. Feb. 10, 2009).

4.      The Government asks the Court to reconsider those provisions of the Discovery Order requiring identification of the anonymous sources of information in three intelligence reports.[4]  The briefing on this issue is unclear.  In the Government's initial Opposition to Petitioner's Motion to Compel, it objects to producing unredacted information to Petitioner.  However, an examination of the three reports in question indicates that no redactions were made to the documents; rather, they are all based on information provided by anonymous sources.  Petitioner countered this Government objection by again insisting on the identities of the sources, and insisting that this information was necessary to impeach their statements.  He argues that the Court's May 11 order requires production of source names.

Because of this confusion, the Court defers its ruling on this issue.  Parties should confer, and submit by **December 13, 2009**, a Praecipe clarifying their positions.  Even if the Court were to grant the Government's request, the Government's decision to protect the sources of information that it relies on to detain Petitioner may cause these specific pieces of evidence to run afoul of the standards for reliability set out by the Court of Appeals in Parhat v. Gates, 532 F.2d 834 (D.C. Cir. 2008).

---

[3]      The fact that the Court may have imposed narrower discovery obligations in other cases (with different factual scenarios, lawyers, and arguments), does not mean that it should impose the same obligations in every other case.

[4]      Three intelligence reports are at issue.  In its Discovery Order, the Court explained that because Petitioner's request double-listed one report, the Order pertained to only two documents.  Discovery Order at 9 n. 5.  While Petitioner did indeed double-list one document in making his request, he also attached the relevant intelligence reports to his classified Motion.  Three different reports were attached.  Therefore, the Court infers that Petitioner is indeed seeking source information for three distinct documents, but erroneously listed the names of those documents in making his request.

5.      The Government requests reconsideration of the manner in which it was directed to respond to Petitioner's Requests for Admissions.  Respondents were ordered "to squarely admit or deny 'there is evidence' supporting the particular request for admission.  If there is 'no evidence' regarding a specific request for admission, the Government is to say so."  Discovery Order at 17.

The Government's request for reconsideration is **denied**.  To clarify:  the Government is required to respond to Petitioner's Requests for Admissions in the following fashion:  it must admit or deny that it has no evidence, of which it is currently aware, to support the particular admission in question.

6.      In its Discovery Order, the Court allowed two witness interviews "rather than the deposition[s] that Petitioner prefers." Id. at 18-19.  The Government now seeks reconsideration to require depositions rather than informal, unrecorded interviews.  Petitioner opposes that request.  In short, both parties have flipped their positions.

The Government bases its request on the assumption that if the witnesses give statements to Petitioner which will be helpful to his case, that Petitioner will seek to introduce such statements into evidence.  The Government further argues that should the Petitioner seek to introduce such statements into evidence, it would have the right to be present for those interviews, as well as to question the witnesses; in that case, formal depositions would be more reliable and accurate.  The Government's assumption, however, may be inaccurate.  At this point in the proceedings, Petitioner has no had a chance to interview the witnesses, has no idea about whether he will seek to introduce their statements and, therefore, the Government has no right to be present at those interviews.  Should the Petitioner, at some point, seek to introduce testimony by those witnesses, then, of course,

the Government will be allowed to question them.  In short, we will cross that bridge when we get to it.  Therefore, the Government's Motion for Reconsideration is **denied** on this issue.

7.     The Government requests modification of the Court's requirement that it search the Task Force materials for exculpatory evidence.[5]  The Government represents that the use of its search terms with respect to the 22 witnesses named in this case has yielded over 45,000 hits, i.e., documents requiring further review.   In addition, the Government has learned that the 5,000 potentially responsive documents it learned of earlier when it searched Petitioner's name, aliases, and identification numbers, actually retrieves over 11,000 documents.  In sum, the Government is greatly concerned that it must review nearly 60,000 documents, which it claims will include a great number of documents having nothing to do with this Petitioner or any of the 22 identified witnesses. In short, to avoid a search of this magnitude, which would take months to complete, the Government requests that the parties be ordered to meet and confer in a good faith effort to develop parameters for a Task Force search that is reasonably calculated to lead to the discovery of admissible evidence without yielding such an enormous number of hits.  Petitioner's counsel has declined to agree to any limitations on search terms.  Mot. to Reconsider at 19-21.

Petitioner takes a "hard line" position that he "is entitled to any exculpatory evidence located in the Task Force Database."  Pet.'s Opp'n at 16.  He argues that a full search of that database is required under Boumediene and has, in fact, been ordered by other Judges in this District.  However, it would appear that no case involves as many documents as this one.  Petitioner does note that the

---

[5]     The Government has stated that it has already begun this task.  Government Reply at 4 n. 3.

number of witnesses identified by the Government is too high, and he will work with the Government to prioritize (and possibly narrow) that list of witnesses. Id. at 18.

As Judge Lamberth recently stated:

> Respondents' assertion that searching the Task Force's materials would be too burdensome is unavailing. As this Court has previously stated, the Task Force's materials are readily available and may produce new exculpatory information. Bin Attash, Civ. No. 05-1592 Mem. [215] at 16. Only upon respondents' production of exculpatory Task Force materials will this Court be able to give petitioner a "meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of the relevant law. Boumediene v. Bush, __ U.S. __, 128 S. Ct. 2229, 2266, 171 L.Ed.2d 41 (2008). Accordingly, this Court shall order respondents to produce any exculpatory materials assembled by the Executive Task Force.

Lnu v. Obama, No. 09-745, 2009 WL 3030648, at *4 (D.D.C. Sept. 23, 2009); see also Bin Attash, 628 F. Supp. 2d at 38-39.

While the Government's Motion for Reconsideration is being denied on this issue, the Court emphasizes that it is in the interest of both parties to make strenuous efforts to narrow the universe of documents that must be examined. On the one hand, the Government has its own concerns about limited resources; on the other hand, Petitioner must suffer the consequences of any delay, occasioned by this extensive search in reaching a final hearing on the merits to determine whether detention is justified. Neither "Rambo tactics" nor "defensive lawyering" will serve any party's interests in the long run.

**WHEREFORE**, it is this 3rd day of December, 2009, hereby

**ORDERED**, that the Government's Motion for Reconsideration is **granted in part and denied in part**.


/s/

Gladys Kessler
United States District Judge


**Copies via ECF to all counsel of record**