**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MUHAMMAD AHMAD ABDALLAH AL ANSI** | ) | |
| *Petitioner*, | ) | |
| **v.** | ) | Civil Action No. 08-cv-01923-GK |
| **BARACK H. OBAMA, et al.,** | ) | |
| *Respondents*. | ) | |

**PETITIONER'S MOTION TO COMPEL PRODUCTION OF TASK FORCE STATUS**

On January 22, 2009, President Obama issued Executive Order 13492 calling for a comprehensive review of the status of all individuals detained in Guantánamo Bay, Cuba.  To implement this directive, the Attorney General established the Guantánamo Review Task Force ("Task Force").  The Task Force invited habeas counsel for Guantánamo Bay detainees to submit position papers on behalf of their clients, detailing why they should be cleared for release.  The undersigned made two submissions to the Task Force on behalf of Mr. al Ansi.

In February, 2010, the undersigned contacted the Task Force to learn its conclusions with respect to Mr. al Ansi.  The Task Force responded as follows:  "The Task Force has completed its work.  We thus are no longer meeting with counsel.  The government's *habeas* counsel are the ones to whom you should address any questions about a detainee's status."  *See* email correspondence from Jay Bratt to Lisa Strauss (February 9, 2010), attached as Exhibit A.

Counsel then contacted the attorneys at the Justice Department defending this habeas case.  Their response is protected and will be filed under seal as Exhibit B.

783578.1

In May, 2010, the Final Report of the Guantánamo Review Task Force was made public. *See* Exhibit C.  The Report discusses the process by which the review was conducted, decisions resulting from the review, and progress made toward implementing those decisions.  The Task Force concluded that 126 detainees were unanimously approved for transfer subject to appropriate security measures.  Exhibit C at 10.  Thirty-six detainees remain the subject of active cases or investigations for potential prosecutions.  *Id.* at 11.  Forty-eight detainees were unanimously approved for continued detention.  *Id.* at 12.  Thirty detainees from Yemen were unanimously approved for "conditional" detention based on current security conditions in Yemen."  *Id.* at 12.

In separate sections, the status of the Yemeni detainees remaining in Guantánamo is discussed in further detail.  This section is of particular importance since the Government classifies Mr. al Ansi as a Yemeni citizen.  The report discloses that thirty-six Yemenis have been cleared for transfer.  *Id.* at 18, 25.  At least seven of the cleared Yemenis have been repatriated to Yemen.[1]  *Id.*  The Task Force concluded that twenty-six Yemeni detainees should be indefinitely detained.  *Id.* at 25.  Five Yemenis are being actively prosecuted.  "The remaining 30 Yemeni detainees were determined to pose a lower threat than the group of detainees designated for continued detention under the AUMF."  *Id.*  However, these thirty Yemenis have a "conditional" detention status and may be transferred if one of the following conditions is satisfied:  "(1) the security situation improves in Yemen; (2) an appropriate rehabilitation program becomes available; or (3) an appropriate third-country resettlement option becomes available."  *Id.* at 26.

---

[1]  At least one more Yemeni has been transferred to Yemen since the report issued according to the news media.  *See*  Rosenberg, Carol, *U.S. Sends Yemeni Detainee Home*, Miami Herald (July 14, 2010), *available at*  http://www.miamiherald.com/2010/07/14/1729377/us-sends-yemeni-detainee-home.html?story_link=email_msg.

After the public dissemination of this information, counsel again asked the Justice

Department habeas attorneys assigned to this matter to disclose which of the four categories Mr.

al Ansi fell.  *See* Letter from Lisa Strauss to Sarah Maloney dated June 10, 2010, attached as

Exhibit D.  This request was made under the Case Management Order governing this action.

The Government's response is "protected" and filed under seal as Exhibit E.  As the parties were

not able to come to a resolution after conferral, Petitioner filed this motion to compel disclosure

of Mr. al Ansi's Task Force status and any reports or memoranda detailing the same.  Petitioner

also seeks a Court order removing the "protected" status of this information or at least directing

that counsel may inform Mr. al Ansi of his status.[2]

## ARGUMENT AND CITATION TO AUTHORITY

**I.      The Court Should Order Disclosure of Mr. al Ansi's status as Determined by the Task Force and Related Reports.**

Discovery in this case is ongoing.  Currently, Petitioner is awaiting the Government's

completion of discovery, including its production of exculpatory evidence from the database

used by the Guantánamo Task Force, which must be completed on September 30, 2010.  Mr. al

Ansi's current request is narrow:  disclosure of Mr. al Ansi's status as determined by the Task

Force and production of any reports or documents discussing the Task Force's decision to detain

and/or release Mr. al Ansi.  This request falls under numerous portions of the Case Management

Order (as amended on February 12, 2009, Docket 48-1)("CMO") and should be compelled for

the following four reasons.

First, this information is relevant to the Government's current "Legal Justification" to

detain Mr. al Ansi within meaning of Section I.B of the CMO.  Since early 2009 when the

---

[2]   Indeed, as of the date of the filing of this motion, the Privilege Review Team, which reviews mail sent by counsel to detainees, has refused to allow counsel to send a copy of the publicly available Final Report of the Guantánamo Review Task Force to Mr. al Ansi.

Government first made its disclosure pursuant to this section of the CMO, the Task Force has had the benefit of additional evidence and information gathered from a variety of sources.  Based upon these considerations, the Government now has made an additional determination of its legal justification to detain Mr. al Ansi indefinitely (or otherwise).  While Section I.B of the CMO utilizes terminology that is no longer operative (*i.e.* "enemy combatant"), the Task Force's more recent classifications of "indefinite detention" and "conditional detention" are more accurate and relate to the current status of Petitioner's detention.  Accordingly, Petitioner's request falls under Section I.B. of the CMO as presently applicable.

Second, this information is potentially exculpatory within meaning of Section I.D.1 of the CMO.  Any status other than "referred for prosecution" is arguably exculpatory because it tends to undermine materially the Government's justification for detaining Petitioner, particularly if the Task Force has classified Mr. al Ansi as "appropriate for transfer" or "conditional detention" as one of the group of Yemenis who "pose a lower threat than the group of detainees designated for continued detention under the AUMF."  Exhibit C at 25.

Third, this request can be considered discovery within meaning of I.E.2 of the CMO.  It is narrowly tailored and could enable Petitioner to rebut the factual basis for his detention by lending credibility to his version of events or demonstrating the Government's lack of evidence that Mr. al Ansi has committed acts of terrorism.  At the least, the Government will likely rely on the conclusion and underlying evidence in the hearing in this matter.   The underlying evidence considered by the Task Force has already been ordered produced in this habeas action.  The detention status is equally probative of the Government's authority to detain Mr. al Ansi.  Even if the decision has been made to prosecute Mr. al Ansi, Petitioner's counsel needs access to such conclusions in order to preserve effectively Mr. al Ansi's rights against self-incrimination.

Finally, the Government's conclusion about Mr. al Ansi's detention status is a party admission under Federal Rule of Evidence 801(d)(2).   The Task Force and resulting conclusions was directly ordered by the President, a defendant in this lawsuit on whose behalf the Task Force was working.  *See* Exhibit C at 2.  When considering admissions made by Government officials in the context of Rule 801(d)(2), courts construe "the Government" broadly, particularly across the Executive Branch.  *See, e.g., United States v. AT&T*, 498 F. Supp. 353 (D.D.C. 1980) (holding that in anti-trust proceedings, the entire government – not just the Justice Department – is a party for purposes of Rule 801(d)(2)).  Likewise, the Executive Branch defendants here cannot carve out the Task Force as a separate body for purpose of habeas proceedings and party admissions.  That is precisely the reason this Court and others in this District have required Respondents to search the Task Force database for exculpatory evidence and discovery materials.

The Government has already announced publicly in some detail the detention statistics for the remaining Guantánamo prisoners.  Under the rule of completeness, it should be required to disclose the specific category of detention – at least to the individual detainee who has been held for eight and a half years without charges, if not publicly.  While this Court is not bound by Petitioner's status as determined by the Task Force, such a determination is relevant and a party admission as well as possibly a prior inconsistent statement within meaning of Federal Rules of Evidence 801(d)(1) and 801(d)(2).  Moreover, the Court should be "unwilling to accept a situation in which both the Task Force and the Court simultaneously review the Petitioner's status as a detainee at Guantánamo Bay, but the Court does so with less information than is currently available to the Attorney General and the Task Force." *Alsawam v. Bush*, Case No. 05-cv-1244, April 17, 2009, Docket [156] at n. 1.  For the reasons set forth above, the Court should

grant Petitioner's request and compel the Government to disclose Mr. al Ansi's status as determined by the Task Force as well as any reports or documents discussion the same.

**II.      The Court Should Allow Mr. al Ansi Access to Information Concerning his Continued Detention Status.**

The Government's designation of any correspondence or information about Mr. al Ansi's status as "protected" is without any basis.  Disclosure of that status does not in any way harm the United States interests.  The fact of his continued detention is already publicly known.

This protected status prohibits counsel from communicating with Mr. al Ansi on this topic.  It also hinders counsel's investigation or assistance in locating a potential third-country settlement option within meaning of the Task Force's "conditional detention status" because (a) counsel does not know what his status is; and (2) even if counsel has knowledge, they cannot discuss that status with any diplomats or aide organizations in third-party countries.  This is of particular import given the dozens of habeas detainees who have won their habeas cases but remain in Guantánamo because they cannot be repatriated to their home country.

Finally, Mr. al Ansi should know the results of the Task Force investigation in which he participated.  He has been detained for over eight years without knowledge of the Government's evidence or conclusions because of the classified nature of these proceedings.  Petitioner should at least have access to the Task Force's conclusions about his detention status as a matter of fundamental fairness.  There is no potential harm by such disclosure that outweighs the Petitioner's right to know this basic information.

Accordingly, the Court should enter an Order allowing counsel to share information about Petitioner.  A proposed order is attached as Exhibit F.

Respectfully submitted, this 27th day of July, 2010.

        /s/ *Lisa R. Strauss*
        Emmet J. Bondurant
        Georgia Bar No. 066900
        Michael B. Terry
        Georgia Bar No. 702582
        Lisa R. Strauss
        Georgia Bar No.  686943

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
Telephone:  (404) 881-4100
Facsimile:  (404) 881-4111

        COUNSEL FOR PETITIONER

783578.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2010, I electronically filed the foregoing PETITIONER'S

MOTION TO COMPEL PRODUCTION OF TASK FORCE STATUS with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such filing to the

following attorneys of record:

| | |
|---|---|
| Terry Marcus Henry<br>Sarah Maloney<br>U.S. DEPARTMENT OF JUSTICE<br>Federal Programs Branch<br>20 Massachusetts Avenue, NW<br>Washington, D.C. 20530<br>(202) 514-4107<br>Fax: (202) 616-8470<br>Email: terry.henry@usdoj.gov<br>sarah.maloney2@usdoj.gov | |

The exhibits, which the Government deemed "protected," were filed under seal by federal

express this day with copies sent to the mailing address above for the attorneys of record.


/s/ Lisa R. Strauss
Lisa R. Strauss